UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BILLIE PHILLION,

        Plaintiff,                                             Hon. Ellen S. Carmody

v.                                                        Case No. 1:05-CV-375

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. On August 10, 2005, the parties consented to proceed before the undersigned for all further proceedings, including an order of final judgment. 28 U.S.C. § 636(c)(1). By Order of Reference, the Honorable Richard Alan Enslen referred resolution of this matter to this Court. (Dkt. #7).

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **reversed and this matter is remanded for the awarding of benefits**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 31 years of age at the time of the ALJ's decision.  (Tr. 32).  She completed the tenth grade[1] and worked previously as a cook, deli clerk, produce clerk, and waitress.  (Tr. 111, 119-25, 316).

Plaintiff first applied for benefits on November 27, 2000.  (Tr. 48).  Her application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 38).  On June 21, 2002, Plaintiff appeared before ALJ William Musseman, with testimony being offered by Plaintiff and vocational expert, Stephanee Leech.  (Tr. 38, 48).  In a written decision dated August 29, 2002, the ALJ determined that Plaintiff was not disabled as defined by the Act.  (Tr. 38-48).  Plaintiff did not appeal this determination.

Plaintiff again applied for benefits on October 29, 2002, alleging that she had been disabled since April 1, 2000, due to lyme disease, fibromyalgia, muscle tendon and nerve damage, and two ruptured discs.  (Tr. 86-88, 110, 182-85).  Her application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 35-86, 186-90).  On July 29, 2004, Plaintiff appeared before ALJ James Prothro, with testimony being offered by Plaintiff, Plaintiff's daughter, and vocational expert, Randall Nelson.  (Tr. 311-67).  In a written decision dated

---

[1] Plaintiff testified that she "can't really" remember whether she dropped out of high school after the tenth or eleventh grade.  (Tr. 316).

September 24, 2004, the ALJ determined that Plaintiff was not disabled as defined by the Act. (Tr. 21-34). The Appeals Council declined to review the ALJ's decision, rendering it the Commissioner's final decision in the matter. (Tr. 14-15). Plaintiff subsequently appealed the matter in this Court pursuant to 42 U.S.C. § 405(g).

Plaintiff's insured status expired on March 30, 2003. (Tr. 22, 98-102); *see also*, 42 U.S.C. § 423(c)(1). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

Before analyzing Plaintiff's claim, the Court must first clarify the boundaries of its subject matter jurisdiction. As noted above, Plaintiff first applied for benefits in 2000. This application was denied in a decision dated August 29, 2002. Plaintiff did not seek judicial review of this determination.

Except in cases presenting "a colorable constitutional issue," social security claimants are bound by the principles of res judicata. *Drummond v. Commissioner of Social Security*, 126 F.3d 837, 841 (6th Cir. 1997); *see also*, 20 C.F.R. § 404.957(c)(1). As previously noted, Plaintiff's prior application for benefits was denied. Because Plaintiff did not challenge these decisions, they became the Commissioner's final decision in the matter. *See* 20 C.F.R. § 404.987(a). While such final decisions may be reopened (and thus modified) under certain conditions, *see* 20 C.F.R. § 404.988, Plaintiff has not asserted that she satisfies any such condition, nor has she alleged that her claim presents a colorable constitutional issue warranting a relaxation of the application of res judicata.

Accordingly, the issue of Plaintiff's disability status through August 29, 2002, has been completely adjudicated on the merits to finality, and is not subject to further adjudication. *See*

4

*McCoy v. Chater*, 81 F.3d 44, 46 (6th Cir. 1995); *see also*, 20 C.F.R. § 416.1450(f) (if a factual issue was previously decided "in a claim involving the same parties. . .the administrative law judge will not consider the issue again, but will accept the factual finding made in the previous determination or decision unless there are reasons to believe that it was wrong").

## MEDICAL HISTORY

In March 2002, Dr. Arnold Markowitz diagnosed Plaintiff with Lyme disease. (Tr. 305). Lyme disease is a multi-system inflammatory disease caused by a bacterium carried by deer ticks. *See* Lyme Disease, available at http://www.aldf.com/lyme.shtml (last visited on August 25, 2006). Lyme disease initially affects the skin, but spreads to the joints and nervous system. *Id.* While many sufferers of Lyme disease are successfully treated, a certain percentage will experience symptoms which endure for years after treatment. *See* Lyme Disease Symptoms, available at http://www.cdc.gov/ncidod/dvbid/lyme/ld_humandisease_symptoms.htm (last visited on August 25, 2006). These lingering symptoms can include "muscle and joint pains, arthritis, cognitive defects, sleep disturbance, or fatigue." The cause of such lingering symptoms is unknown, but thought to "result from an autoimmune response, in which a person's immune system continues to respond even after the infection has been cleared." *Id.*

On January 15, 2003, Plaintiff participated in an electromyogram examination of her lower extremities, the results of which revealed "findings which could be consistent with a mild sensory peripheral polyneuropathy." (Tr. 194). There was, however, "no evidence of lumbar radiculopathy." *Id.*

On February 11, 2003, Plaintiff participated in a consultive examination, conducted by Edward Tava, Ed.D. (Tr. 205-11). Plaintiff exhibited "marginal" self-esteem and her self-insight was "rather poor." (Tr. 207). Her motor activities were "very lethargic." Plaintiff appeared to be "very dependent on other people" and her motivation for change was "marginal." Plaintiff talked "excessively," but "jump[ed] from topic to topic." *Id.* As part of this evaluation, Plaintiff participated in the Wechsler Memory Scale examination, the results of which revealed that Plaintiff experienced a "mild impairment" in her memory skills. (Tr. 208-11). Dr. Tava diagnosed Plaintiff with generalized anxiety disorder and depressive disorder. (Tr. 208).

On February 25, 2003, Julia Crowther, Ph.D. completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 212-25). Determining that Plaintiff suffered from a depressive disorder and a general anxiety disorder, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.04 (Affective Disorders) and Section 12.06 (Anxiety-Related Disorders) of the Listing of Impairments. (Tr. 213-21). Dr. Crowther determined, however, that Plaintiff failed to satisfy any of the Part B criteria for these particular impairments. (Tr. 222). Specifically, the doctor concluded that Plaintiff suffered no restrictions in the activities of daily living, no difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and never experienced episodes of decompensation. *Id.*

Dr. Crowther also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 226-29). Plaintiff's abilities were characterized as "moderately limited" in three categories. With

6

respect to the remaining 17 categories, however, the doctor reported that Plaintiff was "not significantly limited." *Id.*

On March 25, 2003, Plaintiff participated in a consultive examination performed by Dr. Linford Davis. (Tr. 232-40). Plaintiff reported that she was experiencing "headaches, dizziness, fainting, ringing in her ears, sore throat, swollen glands, chest pain, weakness, migratory joint pain, night sweats, rapid heartbeat, hypertension, [and] swelling of her joints." (Tr. 232). Plaintiff further complained that she was experiencing "abdominal pain and muscle pain with spasms, heartburn, nausea, vomiting, back pain with tingling in [her] extremities and pain radiating down her legs from her back." *Id.*

An examination of Plaintiff's upper extremities revealed no evidence of deformity, muscular atrophy, or diminished pulse. (Tr. 234-35). Aside from a mildly reduced ability to rotate her shoulders, Plaintiff exhibited normal range of motion. (Tr. 239). An examination of Plaintiff's lower extremities revealed "signs of muscle atrophy." (Tr. 235). Straight leg raising was negative, but Plaintiff was unable to heel walk, toe walk, or tandem walk. (Tr. 235, 240). Romberg testing[2] was "significant for swaying but no tendency to fall." *Id.*

The doctor concluded that the "symptomatology and findings of slight mild sensory neuropathy is compatible with Lyme disorder," but further observed that there "is suggestive evidence of significant psychiatric overlay." (Tr. 236). Dr. Davis also reported that Plaintiff was "consuming a lot of pain medication" and was "functionally impaired." *Id.* The doctor concluded that Plaintiff with suffering from depression, arthralgia, and lyme disease. (Tr. 235).

---

[2] Romberg test is a neurological test designed to detect poor balance. *See* Romberg Test, available at http://www.mult-sclerosis.org/RombergTest.html (last visited on July 8, 2005). The patient stands with her feet together and eyes closed. The examiner will then push her slightly to determine whether she is able to compensate and regain her posture. *Id.*

7

On July 30, 2003, Dr. Markowitz reported that Plaintiff "is constantly in pain, achey, confused and tired. She is not currently employable, who would want to have her work for them with her impairments." (Tr. 258). The doctor further stated that "[i]t is my opinion that at this time due to the above medical problems, [Plaintiff] is unable to work." *Id.*

On April 19, 2004, Dr. Markowitz completed a Fibromyalgia Residual Functional Capacity Questionnaire regarding Plaintiff's condition. (Tr. 279-82). The doctor reported that Plaintiff satisfied the American College of Rheumatology criteria for fibromyalgia. (Tr. 279). Plaintiff's prognosis was characterized as "poor." *Id.* With respect to Plaintiff's functional limitations, Dr. Markowitz reported that during an 8-hour workday, Plaintiff can sit and stand/walk for only "about 2 hours" each. (Tr. 281). The doctor further reported that Plaintiff must be able to shift her position at will. *Id.* Dr. Markowitz reported that Plaintiff can occasionally lift ten pounds and can frequently lift lesser amounts. (Tr. 282). The doctor also reported that Plaintiff can rarely twist, stoop, crouch/squat, or look down; and can only occasionally look up or turn her head to the left or right. *Id.*

On May 4, 2004, Dr. Markowitz was deposed by Plaintiff's counsel. (Tr. 259-64). The doctor testified that he began treating Plaintiff on June 12, 2001, at which time he diagnosed her with "a fibromyalgia type of entity, but that it was in association with an infectious organism, either the organism that causes Lyme disease. . .or associated with mycoplasma pneumonia, both of which have a reasonable response to doxycycline." (Tr. 260-61). Dr. Markowitz also noted that Plaintiff suffers from "some mild" hyperparathyroidism which "can cause a lot of muscle pains and joint pains and calcium deposits and fatigue." (Tr. 262). The doctor also indicated that the results of a recent test were "suggestive of a reactive infection."

The doctor stated that his current diagnosis for Plaintiff was "burned out Lyme disease" with a "residual diagnosis [of] fibromyalgia." When asked what the term "burned out Lyme disease" meant, Dr. Markowitz stated that "[t]here's no evidence of active Lyme. Probably Lyme set it off. Now what we're left with is this pain, joint problem, muscle aches, fatigue, confusion syndrome." The doctor further indicated that while Plaintiff has "not shown any dramatic improvement," she has "shown some stabilization and some improvement in her pain, but the trade-off has been that she's too pooped to participate most of the time." *Id.* Specifically, the doctor reported that the various pain medications which Plaintiff takes leave her too "narcotized" to effectively function in the workplace. (Tr. 264). Dr. Markowitz concluded that he "cannot imagine [Plaintiff] working in any reasonable capacity" because "she can't function for longer than half an hour or an hour at any time before she has to take a prolonged rest period." (Tr. 263).

On July 6, 2004, Plaintiff completed a questionnaire regarding her activities. (Tr. 176-81). Plaintiff reported that she sleeps 18 hours each day and spends the rest of her time laying in a recliner "with terrible fatigue." (Tr. 176, 179). Plaintiff reported that she drives, shops, and cooks "once a week," tries (without success) to clean her house each week, and grooms herself "only when I go somewhere which is hardly ever." (Tr. 178).

At the administrative hearing, Plaintiff testified that after climbing only three steps her legs start burning, causing her to experience nervousness, heart palpitations, and feeling of impending unconsciousness. (Tr. 320). Plaintiff testified that her "back burns a lot" because she suffers from arthritis "from the tip of [her] neck to the bottom of [her] spine." (Tr. 331-32). Plaintiff reported that she cannot even lift an object weighing one pound. (Tr. 338). She also testified that if she holds her hands up for longer than five seconds they start burning and she experiences nausea.

9

(Tr. 339). Plaintiff testified that even on her "best days" she cannot stand, as attempting to do so causes her arms and legs to burn. (Tr. 342-43).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

### B. The ALJ's Decision

The ALJ determined that Plaintiff suffers from the following severe impairments: (1) degenerative disc disease of the lumbar spine, (2) finbromyalgia/lyme disease, and (3) affective

---

[3] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

disorder. (Tr. 27). The ALJ further determined that these impairments, whether considered alone or in combination, fail to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* The ALJ concluded that while Plaintiff was unable to perform her past relevant work, there existed a significant number of jobs which she could perform despite her limitations. (Tr. 28-33). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

### 1. The ALJ's Decision is Not Supported by Substantial Evidence

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work activities subject to the following limitations: (1) she can lift 20 pounds occasionally and 10 pounds frequently; (2) she can stand/walk for six hours during

11

an 8-hour workday; (3) she must have a sit/stand option; (4) she cannot perform work activities which requires her to push, pull, or use her upper extremities above chest level; (5) she cannot perform repetitive bending/stooping, kneeling, squatting, crawling, climbing, or turning/flexing of the neck; (6) she cannot perform work activities requiring her to read written instructions; and (7) she cannot interact with the general public or perform more than simple, routine tasks.  (Tr. 30).

With respect to Plaintiff's mental impairments the ALJ further concluded that Plaintiff experiences mild restrictions in the activities of daily living, mild difficulty maintaining social functioning, moderate difficulty maintaining concentration, persistence or pace, and has never experienced "a loss of adaptive functioning when an exacerbation or temporary increase of symptoms was experienced."  (Tr. 27).

The ALJ determined that Plaintiff was unable to perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding.  *See Richardson*, 735 F.2d at 964.

While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden.  *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added).  This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy.  *See Richardson*, 735 F.2d at 964.  Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can

perform, her limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Randall Nelson.

The vocational expert testified that there existed approximately 3,700 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 363-64). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold). Accordingly, the ALJ concluded that Plaintiff was not disabled.

> a. The ALJ's determination regarding Plaintiff's RFC is not supported by substantial evidence

A claimant's RFC represents her ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996); *see also, Shaw v. Apfel*, 220 F.3d 937, 939 (8th Cir. 2000) (same); *Lanclos v. Apfel*, 2000 WL at *3, n.3 (9th Cir., July 31, 2000) (same); *Moore v. Sullivan*, 895 F.2d 1065, 1069 (5th Cir. 1990) (to properly conclude that a claimant is capable of performing work requires "a determination that the claimant can *hold* whatever job he finds for a significant period of time").

It is undisputed that Plaintiff was infected with Lyme disease. As discussed above, Lyme disease can produce debilitating residual effects long after the initial infection is resolved.

13

Plaintiff's treating physician, Dr. Markowitz, has consistently reported that Plaintiff suffers from the lingering effects of Lyme disease. This is likewise undisputed. Dr. Markowitz, as well as the Commissioner's consultive examiner, Dr. Davis, recognize that Plaintiff's pain necessitates that she consume large quantities of pain medication. As Dr. Markowitz testified, Plaintiff's medication renders her too "narcotized" to function effectively in the workplace. This evidence is not contradicted. Plaintiff has consistently reported that she is unable to function at a level consistent with the ALJ's RFC determination. The medical evidence reveals that she suffers from a disorder which can reasonably be expected to produce the pain and limitations alleged. *See Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997).

The ALJ observed no behavior contradicting Plaintiff's allegations, nor have any of Plaintiff's care providers called into question the veracity of Plaintiff's subjective allegations. *See Felisky v. Bowen*, 35 F.3d 1027, 1040-41 (6th Cir. 1994) (substantial evidence did not exist to support the ALJ's decision to discredit the claimant's testimony where the claimant's testimony was consistent with information provided to her physicians, none of whom expressed doubts regarding her symptoms or indicated that she exaggerated her pain). While the ALJ has arguably identified evidence supporting his position, Plaintiff is not required to establish the absence of any and all factors adverse to her position. *Id.* at 1041 (it is not necessary that every single factor favor the claimant before finding that the ALJ's decision is not supported by substantial evidence).

Simply put, the evidence fails to support the ALJ's RFC determination. Accordingly, for the reasons herein discussed, the Court concludes that the ALJ's RFC determination is not supported by substantial evidence.

As indicated above, the vocational expert testified that there existed a significant number of jobs which Plaintiff can perform consistent with her RFC. However, the ALJ's RFC determination is not sufficiently supported by the evidence of record. In short, therefore, the hypothetical question, the response to which the ALJ relied upon to support his decision, was based upon an improper RFC determination. Accordingly, the ALJ's conclusion that there exists a significant number of jobs which Plaintiff can perform despite her limitations, is supported by less than substantial evidence. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996) (while the ALJ may rely upon responses to hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments).

b. Evidence of Plaintiff's disability is compelling

While the ALJ's decision is not supported by substantial evidence, Plaintiff can be awarded benefits only if proof of her disability is "compelling." *Faucher v. Sec'y of Health and Human Services*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and immediately award benefits if all essential factual issues have been resolved and proof of disability is compelling).

As discussed above, the uncontradicted evidence reveals that Plaintiff suffers from impairments which can reasonably be expected to impair Plaintiff to an extent well beyond that recognized by the ALJ. As the uncontradicted evidence further reveals Plaintiff is presently incapable of performing work activities on a regular and continuing basis. While Plaintiff's condition may very well improve in the future, the question of Plaintiff's future health is not

presently at issue.  In sum, for the reasons discussed herein, the Court concludes that the evidence of Plaintiff's disability is compelling.

There still remains, however, the question of determining the date on which Plaintiff became disabled.  As previously noted, Plaintiff's insured status for Disability Insurance Benefits under Title II expired on March 30, 2003.  In this respect, the Court finds that the evidence is insufficient to support the conclusion that Plaintiff was disabled prior to the expiration of her insured status.  Rather, the evidence supports the conclusion that Plaintiff was disabled as of July 30, 2003, the date on which Plaintiff's treating physician reported that Plaintiff was "unable to work" due to her various impairments.  Accordingly, the Court finds that Plaintiff is not entitled to Disability Insurance Benefits under Title II, but is entitled to Supplemental Security Income benefits under Title XVI, pursuant to a disability onset date of July 30, 2003.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision does not conform to the proper legal standards and is not supported by substantial evidence.  Accordingly, it is recommended that the Commissioner's decision be **reversed and this matter remanded for the awarding of Supplemental Security Income benefits**.  A judgment consistent with this opinion will enter.


Date:  August 29, 2006                                    /s/ Ellen S. Carmody
                                                               ELLEN S. CARMODY
                                                               United States Magistrate Judge